UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-24746-CIV-BLOOM/D'ANGELO

SILVIO HIDALGO,

      **Plaintiff,**

vs.

FRANK BISIGNANO,[1]
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

      **Defendant.**

_____/

**OMNIBUS REPORT & RECOMMENDATION
ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Cross Motions for Summary Judgment.[2]  Plaintiff Silvio Hidalgo filed his Motion for Summary Judgment on March 26, 2025 (DE 12), and Defendant Frank Bisignano, Commissioner of the Social Security Administration, filed his Opposition to Plaintiff's Motion for Summary Judgment and Cross Motion for Summary Judgment on May 27, 2025 (DE 15).[3]  Plaintiff did not file a reply.  Having considered the Parties' arguments, the relevant legal authorities, and the pertinent portions of the record, and being otherwise fully advised in the premises, for the reasons explained herein, it is respectfully recommended that

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano should be substituted as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The pending Motions for Summary Judgment (DE 12, 15) were referred to the undersigned Magistrate Judge for a Report and Recommendation (DE 17).

[3] Although the docket reflects that Defendant filed a separate response to Plaintiff's Motion for Summary Judgment (DE 16), it is the same document as Defendant's Cross Motion for Summary Judgment (DE 15).

Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Cross Motion for Summary Judgment be **GRANTED**.

## I.     BACKGROUND

On November 23, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of April 1, 2017 (R. 10).[4]  Plaintiff was 56 years-old at the time he filed his application and 52 years-old at the time of the alleged disability onset (R. 10, 77).  Plaintiff claimed disability resulting from spinal stenosis post cervical fusion, history of stroke, "Rule out Parkinson's Disease," obstructive sleep apnea, high cholesterol, anxiety attacks, and high spasticity range in motion (R. 229).  Plaintiff's application for disability benefits was denied initially on March 26, 2021 and on reconsideration on August 25, 2022 (R. 10).  Following a hearing on June 3, 2024, Administrative Law Judge Tracey B. Leibowitz ("ALJ") issued a written decision on June 10, 2024, concluding that Plaintiff was not disabled within the meaning of the Social Security Act (R. 7-26).  Plaintiff appealed, and on October 29, 2024, the Appeals Council denied his request to review the ALJ's decision (R. 1-3).  Thereafter, Plaintiff filed the instant action, claiming that the final decision contains errors of law and is not supported by substantial evidence in the record (DE 1).

### A.     The June 3, 2024 Hearing

Upon Plaintiff's written request, on June 3, 2024, the ALJ held a hearing related to Plaintiff's disability application, at which she heard testimony from Plaintiff and a Vocational Expert (R. 36-61).

---

[4] Citations herein to "R. __" refer to the Social Security Transcript (DE 5).  The page numbers refer to those found on the bottom right corner of each page in the transcript.

1.      *Plaintiff Silvio Hidalgo*

Plaintiff testified that around 2009 and 2010, before the alleged disability onset, he worked as a fitness director and district manager of Ultra Body Fitness (R. 43).  Plaintiff testified that he would lift up to one hundred pounds at that job (R. 43-44).  Later, in 2014, he worked as a shift manager at McDonalds (R. 44).  Plaintiff would lift up to fifty pounds at that job (*id*.).  Plaintiff testified that around 2017, he started seeing Dr. Gonzalo Yanez (R. 45).  After an MRI, Dr. Yanez told Plaintiff that he had suffered a minor stroke (*id*.).  Plaintiff felt his symptoms were getting worse, and in 2019, he saw Dr. Joseph Trainer, who told Plaintiff that his cervical spine C2 and C3 were compressed and that he would need surgery, or he could stop breathing or become paralyzed from the neck down (R. 46).

Plaintiff explained that he had a hard time getting up in the morning because of the stiffness, numbness, and tightness he experiences, and everything takes him longer (R. 47, 51).  Plaintiff testified that he performed basic household activities like cooking, picking up, and looking after himself while his wife and daughter were out of the house (R. 47).  Plaintiff stated that he had a hard time with his hands and the "numbness, the tightness, the cramping, and standing up a long time" (R. 48).  Plaintiff testified that in 2017 and 2018, he was taking cholesterol medication but discontinued use because it made him feel weak (R. 49).  Plaintiff was prescribed several other medications to relieve his pain, which also resulted in adverse effects (*id*.).  Plaintiff was then prescribed Gabapentin but was afraid to take it based on his own research (*id*.).  Plaintiff testified that these medications did not alleviate the pain he was experiencing (R. 49-50).

Plaintiff further testified that in 2017 and 2018, his pain was about a six or seven out of ten (R. 50).  He stated that on the date of the hearing, his pain was at a ten or eleven out of ten and that some days are worse than others because he gets flare ups (*id*.).  Plaintiff testified that he suffered

from depression but never sought treatment (R. 51).  Plaintiff testified that he exercised in the pool for thirty minutes, had light dumbbells, and enjoyed exercising for fun (R. 53).  Plaintiff testified that he still drove, including to the hearing (R. 52-53).  Plaintiff also testified that he occasionally went out to get groceries with his wife using an electric scooter, went to family events, and watched the news, health programs, and soap operas (R. 54-55).  Plaintiff testified that he used a walker prescribed to him after he underwent surgery for his spine in 2019 (R. 46-47).

### 2.  *The Vocational Expert*

The ALJ also heard testimony from Dr. Stephen Cosgrove, a Vocational Expert ("VE") (R. 57-60).  Relying on assumptions regarding an individual of Plaintiff's age, education, work experience, and residual functioning capacity ("RFC"),[5] the VE testified that such individual could not perform Plaintiff's past work but could perform other jobs in the national economy (R. 58-59).  The VE testified that this hypothetical individual could work as a routing clerk, car wash attendant, or small product assembler (R. 59).  In light of Plaintiff's testimony regarding his mental symptoms, the ALJ inquired about work that would allow an individual to be "off task [twenty-five] percent of the day" (*id.*).  The VE testified that this limitation would not be accommodated or tolerated under any circumstances and would most likely be work preclusive (*id.*).

### B.  The ALJ's June 10, 2024 Decision

In denying Plaintiff's claim for disability benefits, the ALJ performed a five-step evaluation, as set forth in Title 20, Code of Federal Regulations, Section 404.1520(a) (R. 12-20).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2017 (R. 12).  At step two, the ALJ found that Plaintiff's "lumbar stenosis, sleep apnea,

---

[5] An individual's RFC represents the most the individual can do in a work setting despite the effects from his or her physical and mental limitations.  20 C.F.R. § 404.1545(a)(1) (2012).

adjustment disorder, neurocognitive disorder, obesity, hyperlipidemia, gastroesophageal reflux disease (GERD), disorders of the skeletal spine, vascular insult to the brain[,] and depressive, bipolar[,] and related disorders" constituted severe impairments (R. 12-13).  The ALJ noted that those impairments "significantly limit the ability to perform basic work activities" (R. 13).  At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in Section 404.1520(d), subpart P, appendix 1 (*id.*).

After a review of the entire record, the ALJ next determined Plaintiff's RFC (R. 14). According to the ALJ, Plaintiff's RFC allows him to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl.  He can have occasional exposure to extreme cold, extreme heat, or hazards such as moving mechanical parts or unprotected heights.  The claimant can understand, remember, and carry out simple instructions involving no more than three steps. He can perform simple tasks for up to two hours without a break.  The claimant can use judgment to make simple work-related decisions in an environment with no more than occasional workplace changes.

(*id.*).  To this end, the ALJ held Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" (R. 15).  At step four, the ALJ analyzed whether Plaintiff had the RFC to perform the requirements of his past relevant work (R. 19).  The ALJ agreed that the demands of Plaintiff's past relevant work exceeded his RFC (*id.*).

Finally, at step five, the ALJ concluded that, considering Plaintiff's "age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that" he could have performed (*id.*).  Accordingly, the ALJ held that Plaintiff was not disabled from April 1, 2017 through June 30, 2018 and was not entitled to disability benefits (R. 20).  The ALJ

set forth all her findings in the June 10, 2024 decision (R. 7-20).

### C.    Medical Opinions and Evidence in the Record

In the June 10, 2024 decision, the ALJ stated that she "considered all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence" and "the medical opinion(s) and prior administrative medical finding(s)" (R. 15).  The ALJ did not defer or give any controlling evidentiary weight to any prior administrative findings or medical opinions in determining Plaintiff's RFC and concluding that Plaintiff was not disabled under the Social Security Act (R. 17-20).

#### 1.    *State Agency Psychological and Medical Consultants*

State agency psychological and medical consultants Jennifer Meyer, Ph.D., Kerri Aaron, M.D., and Steven Arkin, M.D. found insufficient evidence to render an opinion (R. 18) The ALJ found Dr. Meyer, Dr. Aaron, and Dr. Arkin unpersuasive, because the evidence at the hearing level was sufficient to render a determination (*id*.).   State agency psychological consultant Yamir Lamboy, Psy.D. opined that Plaintiff had no severe mental impairments and all mild functional limitations (*id*.).  The ALJ found Dr. Lamboy's opinion unpersuasive, because it was not supported by Plaintiff's medical records and the consultant's own review of the evidence (*id*.).  The ALJ concluded that Plaintiff's medical records reflect that Plaintiff is more limited than Dr. Lamboy opined (*id*.).   However, the ALJ clarified that the record also does not support a finding of limitations greater than the ones that the ALJ discussed (*id*.).

#### 2.    *Dr. Robert M. Jaeger, D.O.*

Plaintiff participated in a consultative exam with Robert M. Jaeger, D.O., on September 14, 2016 (R. 333).  Dr. Jaeger noted that Plaintiff had normal remote, recent, and recall memory and likes to go to the movies, church, parks, and go out with family and friends (R. 334).  Dr.

Jaeger further noted that Plaintiff had regular heart rate and rhythm, clear lungs, positive bowel sounds, normal range of motion in shoulders, elbows, wrists, hips, knees, and ankles, and no neurological deficits (*id*.).   Dr. Jaeger concluded that although Plaintiff has a long history of backpain and lumbar stenosis and had a limp, Plaintiff denied having any chest pain or shortness of breath, had strength in upper and lower extremities, was able to do fine and gross motor activities with his hands, and was able to move without any assistive device (R. 335).  The ALJ found Dr. Jaeger's opinion persuasive and consistent with other medical records from the relevant period (R. 18).

### 3.   *Manuel Alvarez, Ph.D.*

On March 21, 2017, Manuel Alvarez, Ph.D. met with Plaintiff to perform a clinical interview with mental status examination (R. 341).  In his report, Dr. Alvarez noted that Plaintiff was cooperative and spontaneous with good eye contact (R. 342).   He further observed that Plaintiff's mood was stable but sad, appetite was normal, energy levels were low, and there was no history of suicidal ideation (*id*.).   Dr. Alvarez then concluded that Plaintiff was fully oriented, able to recall memory, did not show obsessive compulsive features, and showed average intellectual functioning (*id*.).  The ALJ did not find Dr. Alvarez's opinion persuasive, as Dr. Alvarez did not perform a functional assessment on Plaintiff (R. 18).   However, the ALJ noted that Dr. Alvarez's clinical observations were accounted for in her decision to the extent they were consistent with her other findings (*id*.).

### 4.   *Other Medical Evidence in the Record*

In February 2018, after Dr. Jaeger's and Dr. Alvarez's examinations, Ariadne Solar, A.R.N.P., examined Plaintiff (R. 396).  Plaintiff complained of muscle weakness and a significant ataxic gait and reported multiple occasional falls due to his ataxic gait (*id*.).  Ms. Solar noted that

Plaintiff's EMG studies were negative (*id*.).  Ms. Solar also described that Plaintiff has a history of spinal stenosis and spondylosis (*id*.).  Ms. Solar noted that Plaintiff had a follow-up appointment with neurology but did not continue management (*id*.).  Plaintiff denied symptoms of depression, chest pain, abdominal pain, and heart burn (R. 397).  After examining Plaintiff, Ms. Solar reported that Plaintiff was alert, well developed, oriented, and with normal mood and affect (R. 396).  Ms. Solar found Plaintiff's musculoskeletal system nontender, non-erythematous, and with no edema (*id*.).  Ms. Solar also reported Plaintiff had full range of motion in his neck and had an ataxic gait with no loss of strength (*id*.).  Ms. Solar found no issues with Plaintiff's eyes, ears, nose, throat, neck, thyroid, heart, lungs, abdomen, and muscles and bones (*id*.).

In April 2018, Plaintiff underwent an MRI of his brain ordered by Dr. Gonzalo Yanez, M.D. (R. 359).  The MRI indicated that Plaintiff had a patchy left periventricular T2 hypertense focus in the left lentiform nucleus, which may have signified a remote infarct (*id*.).  In May 2018, Dr. Yanez ordered an MRI of Plaintiff's lumbar spine (R. 352).  The MRI indicated that Plaintiff's L4-5 vertebra had chronic spondylosis with severe narrowing of the disc space and spondylotic bulging of the lumbar disc, left sided posterior facet arthrosis, and interim retracted previous posterior central disc protrusion with shallow posterior central disc bulge impressing upon the ventral epidural fact (*id*.).  There was no deformity of the thecal sac nor spinal canal stenosis (*id*.).  At the L3-4 vertebra, Plaintiff had generalized eccentric towards the right bulging of the disc annulus with associated mild narrowing of the right neural foramen and mild crowding of the transforaminal right L3 nerve root and no central spinal canal stenosis (*id*.).  At the L2-3 and L1-2 vertebrae, Plaintiff had no disc herniation, nerve root impingement, or central spinal canal stenosis (*id*.).

## II.    LEGAL STANDARD

### A.    Statutory Framework

A claimant seeking to qualify for disability benefits must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). Plaintiff bears the burden of proving that he is disabled and producing evidence to support his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a) (2000)).

Under the Social Security regulations, the ALJ must follow a five-step process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v) (2012). At step one, the ALJ must determine whether the claimant is currently employed. *Id.* § 404.1520(a)(4)(i). If the claimant is working, and the work constitutes substantial gainful activity, the inquiry concludes.[6] *Id.* § 404.1520(b). At step two, the ALJ must determine whether the claimant suffers from "severe" impairment(s).[7] *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine the medical severity of the claimant's impairment, namely whether the claimant

---

[6] "Substantial gainful activity is work activity that is both substantial and gainful . . . ." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves doing significant physical or mental activities." *Id.* § 404.1572(a). "Gainful work activity is . . . work usually done for pay or profit, whether or not a profit is realized." *Id.* § 404.1572(b).

[7] A severe impairment, or combination of impairments, "significantly limits . . . physical or mental ability to do basic work activities" for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(b), 404.1522(a)-(b) (2017).

suffers from an impairment that meets, or equals, a listed impairment found under Section 404.1520(d), subpart P, appendix 1.  *Id.* § 404.1520(a)(4)(iii).

The ALJ must then determine the claimant's RFC and at step four, whether the claimant's impairments prevent him from performing his past relevant work.  *Id.* § 404.1520(a)(4)(iv).  When determining a claimant's RFC, "the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence."  *Duffy v. Comm'r of Soc. Sec.*, 736 F. App'x 834, 836 (11th Cir. 2018).  The ALJ's RFC assessment informs the "claimant's remaining ability to work despite his impairment."  *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014).  Although the ALJ's decision need not refer to every piece of evidence, the "decision must contain sufficient detail so that [the reviewing court] can conclude that the ALJ considered the claimant's medical condition as a whole in assessing [his] residual functional capacity assessment."  *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601-02 (11th Cir. 2017); *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015).  The applicable Social Security regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a) (2017).  Rather, the ALJ must specify how persuasive the medical opinions are using the following factors: supportability, consistency, the medical source's relationship with the claimant, the medical source's specialization, and any other factors that may support or contradict a medical opinion.  *Id.* §§ 404.1520c(b)-(c).

At step five, the ALJ considers whether the claimant, despite his impairments, can perform work in the national economy given his age, education, RFC, and work experience.  20 C.F.R. § 404.1520(a)(4)(v).  At this last step, the ALJ determines whether the claimant can adjust to other work in the national economy by applying the Medical Vocational Guidelines or by relying on a

Vocational Expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004), *superseded on other grounds by* 20 C.F.R. § 404.1520c.

**B.      Establishing Disability Through Subjective Allegations**

A claimant seeking to demonstrate disability using testimony of pain or other subjective symptoms must establish "evidence of an underlying medical condition and either . . .  objective medical evidence that confirms the severity of the alleged pain arising from that condition or . . . that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 740 (11th Cir. 2008) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the claimant demonstrates a "medically determinable impairment that could reasonably be expected to produce the symptoms[,] . . . the ALJ must evaluate the intensity and persistence of the symptoms in determining how, if at all, they limit the claimant's capacity for work." *De Olazabal v. Soc. Sec. Admin., Comm'r*, 579 F. App'x 827, 831 (11th Cir. 2014) (citing 20 C.F.R. § 404.1529(c)(1) (2011)).  In this analysis, the ALJ must consider the entire record and determine "whether inconsistencies exist between the claimant's statements and the objective medical evidence and other evidence." *Battie v. Kijakazi*, No. 20-CIV-24444, 2022 WL 4000728, at *7 (S.D. Fla. Aug. 9, 2022) (citing 20 C.F.R. § 404.1529(c)(4)).  "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Barclay*, 274 F. App'x at 740 (quoting *Holt*, 921 F.2d at 1223).

**C.      Standard of Review**

The Court's review of an ALJ's final decision is limited to whether the ALJ applied the correct legal standards and whether substantial evidence in the record supports the ALJ's findings.

42 U.S.C. § 405(g) (2023); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Wilson*, 284 F.3d at 1220 ("Substantial evidence 'must do more than create a suspicion of the existence of the fact to be established.'" (quoting *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988))).  The ALJ's factual findings are conclusive if they are supported by substantial evidence, and the Court must defer to the ALJ's final decision.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004).

## III.     DISCUSSION

Plaintiff claims reversal and remand is merited under Section 405(g), because Plaintiff's RFC was improperly assessed and not supported by substantial evidence (DE 12).  Particularly, Plaintiff argues that the ALJ overestimated Plaintiff's RFC and failed to demonstrate how Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with the evidence in the record (*id*. at 5).  Plaintiff further contends that the ALJ did not discuss the medical evidence from 2014, including a March 2014 neurological examination by Dr. Carlos Ramirez Mejia, M.D., a second neurological opinion in May 2014 by Dr. Jorge L. Pardo, M.D., and an April 2014 brain MRI, all of which were purportedly consistent with Plaintiff's allegations of his impairments and symptoms (*id*. at 9-10)  Plaintiff also argues that post-date-last-insured medical evidence further confirms that Plaintiff's significant gait impairment existed prior to the date-last-insured (*id*. at 11).  Plaintiff contends that the ALJ should have called upon a medical expert to opine on Plaintiff's RFC since the state agency reviewing physicians had insufficient evidence to render an opinion (*id*. at 13).  Lastly, Plaintiff emphasizes that the jobs

suggested by the VE in light of Plaintiff's age, education, RFC, and work experience involve extensive standing and walking, and the ALJ did not explain how Plaintiff—who has a spastic, ataxic, shuffling gait—could perform such jobs (*id*. at 16).  According to Plaintiff, the ALJ did not consider all limitations from Plaintiff's impairments, as required by the regulations (*id*.).

In contrast, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff can perform a reduced range of light work (DE 15 at 7).  Defendant emphasizes that the ALJ discussed Plaintiff's allegations regarding his disabling symptoms and limitations and found the objective evidence was not consistent with Plaintiff's account (*id*. at 8).  Defendant claims that as long as the ALJ's decision is sufficient to enable the Court to conclude the ALJ properly considered Plaintiff's condition as a whole, the ALJ need not specifically reference every single piece of evidence in her opinion (*id*. at 13).  Nevertheless, Defendant emphasizes that the ALJ discussed Plaintiff's examination with Dr. Jaeger and Ms. Solar and the April and May 2018 MRIs (*id*. at 9-10).  Defendant argues that the ALJ did not need an expert medical opinion before determining Plaintiff's RFC based on the evidence present in the record (*id*. at 12).  Moreover, Defendant challenges the post-date-last insured evidence, as it does not show Plaintiff's condition as it existed before the date-last-insured (*id*. at 13).  Defendant also reiterates that Plaintiff cannot ask the Court to reweigh evidence or substitute its judgment for the ALJ's, even if a preponderance of the evidence weighs against the ALJ's decision (*id*. at 13-14).

## A.    The ALJ's RFC Determination is Supported by Substantial Evidence.

First, Plaintiff contends that the ALJ overestimated Plaintiff's RFC and failed to properly assess how Plaintiff's symptoms limit his ability to perform work-related activities for the suggested jobs.  Specifically, Plaintiff asserts that the ALJ's RFC determination overlooked Plaintiff's limitations and placed Plaintiff in an incorrect exertional category based on his severe

lumbar spine impairments (DE 12 at 6).[8]  The ALJ concluded that Plaintiff suffered from lumbar stenosis and disorders of the skeletal spine, resulting in an ataxic gait with shuffling present (R. 15, 17).  The ALJ also found, however, that Plaintiff's statements about the limiting effects of his symptoms—including his inability to walk, stand, and sit for long periods—were inconsistent with the medical evidence from the relevant period and that Plaintiff was "less limited" than he alleged (R. 17).  Plaintiff argues that in declining to fully credit his allegations regarding his symptoms, the ALJ's characterization of Plaintiff's hearing testimony leaves out important details, such as the results of his brain MRI, his abnormal gate, his initial treatment for Parkinson's disease, his history of medications, his prior diagnoses, and his consistent reports of pain (DE 12 at 7).  According to Plaintiff, the ALJ also failed to cite or discuss medical and other evidence that demonstrated Plaintiff's allegations of disability remained consistent and were supported by testing and examinations (*id.* at 8-10).

Plaintiff's challenge to the ALJ's finding—that Plaintiff's statements that the intensity, persistence, and limiting effects of his symptoms rendered him disabled are not consistent with the other evidence in the record—is unpersuasive (R. 15).  "After considering a claimant's complaints

---

[8] In her decision, the ALJ addressed Plaintiff's other impairments, including his mental impairments (R. 13).  The ALJ found that Plaintiff had a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation for adapting or managing oneself (R. 13-14).  In his brief, Plaintiff argues that the ALJ incorrectly determined Plaintiff's RFC and overlooked Plaintiff's limitations resulting from his lumbar stenosis and disorders of the skeletal spine (DE 12 at 6).  Plaintiff does not make arguments about, or discuss with any specificity, the ALJ's findings and conclusions about Plaintiff's other impairments, beyond stating in a conclusory fashion that it would be impossible for Plaintiff to engage in the amount of walking and standing that the suggested jobs require, even when considered separate and apart from Plaintiff's other limitations (DE 12 at 6).  Therefore, the Court does not address the ALJ's decision with respect to Plaintiff's other impairments since no issue has been raised.  *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (stating "failure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue").

of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for

substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 656 (11th Cir. 2013)

(quoting *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992)).

> When a claimant attempts to establish disability through his own testimony
> concerning pain or other subjective symptoms, we apply a three-part test, which
> requires '(1) evidence of an underlying medical condition; and (2) either (a)
> objective medical evidence confirming the severity of the alleged pain; or (b) that
> the objectively determined medical condition can reasonably be expected to give
> rise to the claimed pain.'

*Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939-40 (11th Cir. 2014) (quoting *Wilson v.*

*Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002)).   "[T]he ALJ does not have to recite the pain

standard word for word; rather, the ALJ must make findings that indicate that the standard was

applied." *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013).  "Objective

medical evidence 'is a useful indicator' to assist the Commissioner in evaluating the intensity and

persistence of symptoms and pain." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th

Cir. 2020) (citing 20 C.F.R. § 404.1529(c)(2)); *see also Cates v. Comm'r of Soc. Sec.*, 752 F. App'x

917, 920-22 (11th Cir. 2018) (affirming the ALJ's finding that the plaintiff's statements about the

intensity, persistence, and limiting effect of her symptoms were not credible, because there were

not objective findings to provide strong support for such allegations).  "If a claimant testifies as to

his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly

'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely

disabling symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v.*

*Chater,* 67 F.3d 1553, 1561-62 (11th Cir.1995).

Here, the ALJ partially credited Plaintiff's testimony about the limitations resulting from

his symptoms but rejected his claim that "he was not able to work due to his mental and physical

impairments . . . during the relevant period" (R. 17).  In making that finding, the ALJ agreed that

Plaintiff's impairments included lumbar stenosis and disorders of the skeletal spine and then compared Plaintiff's testimony about his symptoms and limitations to the "positive objective clinical findings" (R. 15-16).  For example, Plaintiff described that in 2017, he experienced stiffness, numbness, and tightness that made it difficult for him to get out of bed (R. 15, 47).  He testified about a how a normal day in 2017 would proceed, including cooking and caring for himself (R. 15).  He also stated that he struggled with his mental health and had difficulty working with his hands (R. 48, 50).  The ALJ then turned to a September 2016 examination by Dr. Jaeger, who concluded that Plaintiff had strength in upper and lower extremities, was able to do fine and gross motor activities with his hands, and could ambulate without an assistive device (R. 18, 335).  Although Plaintiff complained of back and hip pain and that he could only sit, stand, and walk for thirty minutes and lift twenty pounds, on physical examination, Dr. Jaeger found Plaintiff had a regular heart rhythm, clear lungs, lumbosacral spine forward flexion at sixty degrees, normal range of motion, and full strength in his shoulders, elbows, wrists, hips, knees, and ankles (R. 334).  The ALJ discussed Dr. Jaeger's observations and that they were consistent with Plaintiff's medical records from the relevant period, including observations by Ms. Solar in early 2018 (R. 18).

During her February 2018 examination, Ms. Solar did not observe Plaintiff in any acute distress and found that although Plaintiff had an ataxic gait with shuffling present, he had no loss of strength and full range of motion (R. 17, 396).  Ms. Solar reported that Plaintiff was alert, well-developed, and had a normal mood and affect (R. 396).   Ms. Solar stated that Plaintiff's musculoskeletal was non-tender, non-erythematous, and exhibited no edema (*id.*).  His abdominal exam was normal (R. 17).  The ALJ also discussed the results of a May 2018 MRI of Plaintiff's lumbar spine, showing Plaintiff had "[c]hronic spondylosis with severe narrowing of the disc space, spondylotic bulging of the lumbar disc, and left sided posterior facet arthrosis contributing

16

to severe left-sided foraminal narrowing and severe crowding of the transforaminal left L4 nerve root, unchanged from prior exam" (R. 353).  The MRI results showed "[n]o deformity of the thecal sac or central spinal canal stenosis" and that at the L3-L4 level, there was "[c]hronic mild generalized eccentric towards the right bulging of the lumbar disc contributing to chronic mild right-sided foraminal narrowing" (*id*.).

The ALJ also observed that Plaintiff's lack of aggressive medical treatment suggested his symptoms and limitations were not as severe as he alleged (R. 17).  The ALJ found that "[Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual" (*id*.).   The ALJ described the course of Plaintiff's treatment as "routine" and "conservative" and discussed records from Ms. Solar in 2018, stating Plaintiff reported a history of musculoskeletal weakness and ataxic gait but when a follow-up with neurology was required, he "did not continue management" (R. 16-17).  Based on the evidence, the ALJ determined that Plaintiff retained an RFC to perform light work with several limitations, such as occasional climbing of ramps and stairs, never climbing ladders, ropes, or scaffolds, and performing simple tasks for up to two hours without a break (R. 18); *see also Watkins v. Comm'r, Soc. Sec. Admin.*, No. 23-12765, 2025 WL 18514, at *16 (11th Cir. Jan. 2, 2025) (finding it is proper for the ALJ to evaluate a claimant's "subjective statements in relation to the evidence in the record" in finding the claimant's "subjective complaints [are] exaggerated and inconsistent with the evidence").

The ALJ stated specific and adequate reasons for discounting Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms.  The ALJ compared Plaintiff's testimony about his symptoms with objective evidence, including clinical findings and observations from multiple practitioners and other medical records from 2016 through 2018, which were close in time to the relevant period.  The ALJ also discussed Plaintiff's daily activities,

physician opinions, and the lack of aggressive medical treatment for Plaintiff's impairments. Indeed, the ALJ stated in her opinion that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (R. 15). The ALJ's decision articulated sufficient reasons for concluding Plaintiff's subjective allegations regarding his symptoms and limitations were not fully consistent with other information in the record for the relevant period, which is supported by substantial evidence and therefore, should not be disturbed. *See Mitchell*, 771 F.3d at 782 ("[W]e we will not disturb a clearly articulated credibility finding supported by substantial evidence . . . .").

Plaintiff counters that the ALJ did not discuss several aspects of Plaintiff's hearing testimony and additional evidence that purportedly supports Plaintiff's allegations, including a supplemental pain questionnaire and records from a 2014 neurological examination with Dr. Ramirez Mejia, a May 2014 second neurological opinion of Dr. Pardo, and a 2014 MRI (DE 12 at 7-10). But, the ALJ need not cite every single piece of evidence in the record to support her findings and conclusions, particularly where that evidence is removed in time from the relevant period.[9] *See Brito v. Comm'r, Soc. Sec. Admin.*, 687 F. App'x 801, 804 (11th Cir. 2017) ("The ALJ is not required to examine every piece of evidence in his opinion, so long as the decision does not broadly reject the claimant's case and is sufficient for a reviewing court 'to conclude that the ALJ

---

[9] Medical records and examinations from 2014 may have little probative value here, where the disability onset date is approximately three years later. *See Aldao v. Colvin*, No. 14-CV-22726, 2016 WL 3583632, at *8 (S.D. Fla. Feb. 29, 2016), *report and recommendation adopted*, No. 14-22726-CIV, 2016 WL 1236899 (S.D. Fla. Mar. 30, 2016) ("[M]edical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability." (citation omitted)). "Courts within the Eleventh Circuit have found pre-onset date evidence to be significant so long as such evidence is: 1) within close proximity to the onset date; and 2) relevant to a claimant's impairment." *Tomasello v. Comm'r of Soc. Sec.*, No. 6:21-CV-1153-DCI, 2022 WL 1045753, at *5 (M.D. Fla. Apr. 7, 2022); *see also Medders v. Soc. Sec. Admin., Comm'r*, No. 21-11702, 2022 WL 222719, at *2 (11th Cir. Jan. 26, 2022) (holding that records that predated the alleged disability onset date did not speak directly to the relevant time period).

considered the claimant's medical condition as a whole.'") (citation omitted).  As discussed herein, the ALJ made no such broad rejection of Plaintiff's case or testimony, and her findings cited sufficient, probative evidence, allowing the Court to conclude that the ALJ considered Plaintiff's medical condition as a whole.  Nor did the ALJ make the RFC determination without performing a proper function-by-function analysis.  The ALJ found that Plaintiff "had the residual functional capacity to perform light work" with certain exceptions after analyzing Plaintiff's functional limitations and work-related abilities, including his ability to move without any assistive device, his strength in his upper and lower extremities, and his ability to "do fine and gross motor activities with his hands," as evidence by the medical opinions, evaluations, and records and the lay evidence discussed in the ALJ's decision.  *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (finding the ALJ performed a proper RFC function analysis where he discussed the claimant's work abilities, including walking, lifting, grabbing, and manipulating, based on the evidence); *Freeman v. Barnhart*, 220 F. App'x 957, 960 (11th Cir. 2007) ("[T]he ALJ complied with SSR 96–8p by considering [the claimant's] functional limitations and restrictions and . . . proceeding to express her residual functional limitations in terms of exertional levels.").

Next, Plaintiff details extensive post-date-last-insured records, which Plaintiff claims establish "continued clinically significant impairment of [Plaintiff's] gait" (DE 12 at 11).[10] Plaintiff argues that "[d]espite the obvious relevance of the post-date-last-insured evidence[,] . . . i.e., the evidence regarding the continuing deterioration of [Plaintiff's] spinal impairments and his eventual cervical spine surgery," the ALJ only considered medical records through May 2018 in her RFC assessment (DE 12 at 12).  Courts can consider post-date-last-insured evidence if it is

---

[10] Post-date-last-insured, Plaintiff was misdiagnosed with Parkinson's disease (R. 501).  In a December 2019 MRI, Plaintiff exhibited severe cervical stenosis with severe spinal cord compression and spinal cord atrophy (*id.*).  In 2019, Plaintiff underwent spinal surgery (*id.*).

persuasive as to Plaintiff's condition as it existed before the date-last-insured.  *Tredik v. Comm'r of Soc. Sec. Admin.*, 826 F. App'x 840, 845 (11th Cir. 2020); *see also Feltner v. Colvin*, No. 14-14290-CIV, 2015 WL 12556154, at *3 (S.D. Fla. Feb. 13, 2015) ("Evidence after [the] date last insured is generally of lesser relevance.").

In this case, the post-date-last-insured evidence constitutes records from medical testing, appointments, and procedures that occurred after the date-last-insured—when Plaintiff's condition had seemingly worsened.  And while these records continually reference Plaintiff's skeletal spine disorder and ataxic gait, they have minimal value in discerning the intensity, persistence, and limiting effects of Plaintiff's symptoms as presented during the relevant period, which was approximately a year or more prior.  *See Caces*, 560 F. App'x at 940 (stating the ALJ "correctly gave 'little weight'" to medical evidence after the date-last-insured, even though it showed "a progressive worsening of [the plaintiff's] condition over a time period extending past his date last insured").  Even more, although Plaintiff asserts the ALJ did not consider significant portions of Plaintiff's testimony and medical records that were not discussed in her opinion, the ALJ stated she considered "all symptoms" that were presented to her and need not refer to every piece of evidence in her decision.  *See Cooper*, 521 F. App'x at 808-09 ("Despite [plaintiff's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application . . . .").

To support his claim of error, Plaintiff relies on *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 478 (10th Cir. 1993)[11] to argue that post-date-last-insured evidence is pertinent to show

---

[11] The Court recognizes that a decision from the United States Court of Appeals for the Tenth Circuit is not binding on this Court.  *See Generali v. D'Amico*, 766 F.2d 485, 489 (11th Cir. 1985). ("[A]uthority from one circuit of the United States Court of Appeals is not binding upon another circuit.").

the severity of prior existing impairments (DE 12 at 12).  Yet, in *Baca*, the ALJ erroneously found

that the plaintiff provided no probative evidence of his condition during the relevant period, even

though a medical opinion given a few years after the relevant period referenced the plaintiff's

condition during the relevant period.  5 F.3d at 478.  Here, the post-date-last-insured evidence does

not show Plaintiff's condition as it existed before the date-last-insured.  Instead, in this case, there

is medical evidence from the relevant period, which the ALJ discussed, and which provided

substantial evidence to support the ALJ's RFC determination.

### B.    The ALJ was not Required to Call a Medical Expert to Opine on Plaintiff's RFC.

Plaintiff asserts that the ALJ should have called on a medical expert to render an opinion

as to Plaintiff's RFC since both state agency reviewing physicians deemed there was insufficient

evidence to render an opinion (DE 12 at 13).  According to Plaintiff, "the ALJ made up her own

RFC without the benefit of a single medical opinion in the record as to the claimant's functional

capacity" (*id*.).  Plaintiff further argues that Social Security Ruling ("SSR") 18-01p allows for an

ALJ to call upon the services of a medical examiner ("ME") to assist in inferring the date that the

claimant first met the statutory definition of disability if sufficient evidence in the record does not

exist (*id.*).  Defendant argues that at the hearing level, the ALJ has the responsibility of assessing

Plaintiff's RFC and that the ALJ did not need a medical expert's opinion before determining

Plaintiff's RFC (DE 15 at 12).  Defendant further points out that SSR 18-01p applies when an ALJ

finds the claimant disabled and then needs to determine when the disability began (*id.* at 11). The

ALJ did not find that Plaintiff ever met the statutory definition of disability in this case (*id*. at 12).

At the outset, Defendant is correct that by its plain text, SSR 18-01p does not apply in this

instance.  SSR 18-01p provides guidance for determining a claimant's Established Onset Date

("EOD"), stating:

To be entitled to disability benefits[,] . . . a claimant must file an application, meet the statutory definition of disability, and satisfy the applicable non-medical requirements. If we find that a claimant meets the statutory definition of disability and meets the applicable non-medical requirements during the period covered by his or her application, we then determine the claimant's EOD. . . At the hearing level of our administrative review process, if the ALJ needs to infer the date that the claimant first met the statutory definition of disability, he or she may call on the services of an ME by soliciting testimony or requesting responses to written interrogatories (i.e., written questions to be answered under oath or penalty of perjury). The decision to call on the services of an ME is always at the ALJ's discretion. Neither the claimant nor his or her representative can require an ALJ to call on the services of an ME to assist in inferring the date that the claimant first met the statutory definition of disability.

*Soc. Sec. Ruling, SSR 18-01p; Titles II & XVI: Determining the Established Onset Date (EOD) in Disability Claims*, SSR 18-01P (S.S.A. Oct. 2, 2018); *see also Castleman v. Comm'r, Soc. Sec. Admin.*, 824 F. App'x 927, 929 (11th Cir. 2020) ("Because sufficient available medical evidence supports the ALJ's determination that [the claimant] was not disabled at any time between her claimed onset date and the date that she was last insured, [the Ruling] does not apply . . . .").[12] Additionally, "the record before the ALJ contained adequate unambiguous medical evidence from which to determine whether [Plaintiff] was disabled, and . . . based on that evidence, the ALJ determined that [Plaintiff] was not disabled between [his] alleged onset date and the date that [he] was last insured." *Castleman*, 824 F. App'x at 929.  The ALJ's decision, therefore, did not run afoul of SSR 18-01p.

"It is well-established that the ALJ has a basic duty to develop a full and fair record . . . ." *Ellison*, 355 F.3d at 1276.  Even still, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision." *Castle*, 557 F. App'x at 853 (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269

---

[12] *Castleman* discussed SSR 83-20, which is the predecessor to SSR 18-01p.  824 F. App'x at 929 n.2 ("Social Security Ruling 18-01p rescinded and replaced the relevant parts of SSR 83-20 as of October 2, 2018." (citation omitted)).

(11th Cir.2007)).  As set forth above, the record here contained sufficient evidence to support the ALJ's RFC determination, including Plaintiff's testimony and subjective allegations, medical records and observations of multiple providers, and MRIs, testing, and treatments.  As such, additional medical opinions were not required, and the regulations task the ALJ with determining Plaintiff's RFC from the evidence presented.  *See Watkins*, 2025 WL 18514, at *16 ("There is no requirement . . . there be medical opinion evidence from a physician that matches the RFC determination.  Rather, the regulations make clear that the task of determining a claimant's RFC and ability to work is solely within the province of the ALJ, not the claimant's doctors.").

### C.    The Court Cannot Reweigh the Evidence or Substitute Its Judgment for the ALJ's.

In the end, Plaintiff argues that the ALJ's RFC finding is necessarily deficient, because it does not consider all of Plaintiff's limitations arising from his impairments (DE 12 at 16).  Specifically, the ALJ's decision purportedly fails to explain how Plaintiff, with a spastic, ataxic, shuffling gait, could stand or walk for prolonged periods, as would be required by the light exertional jobs the VE described in accordance with the ALJ's RFC finding (*id.* at 14-16).  Plaintiff, who testified about his inability to sit, stand, or walk for longer than thirty minutes, claims the record clearly shows "he was certainly incapable of engaging in any prolonged periods of standing or walking in any full-time, competitive capacity on a sustained basis" (*id.* at 16).

The ALJ's decision clearly found that Plaintiff's "allegations regarding disabling symptoms and limitations, in comparison to the objective evidence, is diminished because those allegations are greater than expected considering the objective evidence in the record" (R. 15).  The ALJ rejected more restrictive functional limitations than those incorporated in the ALJ's RFC finding as not supported by "positive objective clinical findings" (*id.*).  In other words, the ALJ did not overlook Plaintiff's reported limitations related to his spastic, ataxic, shuffling gait; rather,

the ALJ disagreed that the record showed Plaintiff was as limited as he described.  Furthermore, besides his own hearing testimony, which was not fully credited for explicit and adequate reasons, Plaintiff does not identify any medical or other evidence that contained an opinion or assessment stating Plaintiff could not extensively stand or walk during the relevant period due to his ataxic gait.  While the record contains ample evidence that Plaintiff was impaired and had an ataxic gait, Plaintiff bears the burden of producing evidence to demonstrate that because of his impairment and related symptoms, he could not sit or stand for any significant period and therefore could not perform light exertional work with additional limitations as the ALJ determined.  *See Ellison*, 355 F.3d at 1276 ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim.").  The ALJ found that Plaintiff had not carried his burden based on a review of the record and additional limitations on Plaintiff's RFC were not warranted.

In contrast, the ALJ highlighted Dr. Jaeger's opinion that although Plaintiff had a long history of backpain and lumbar stenosis and had a limp, Plaintiff denied having any chest pain or shortness of breath, had strength in upper and lower extremities, was able to do fine and gross motor activities with his hands, and was able to move without any assistive device (R. 335).  This opinion was consistent with Ms. Solar's assessment that Plaintiff had full range of motion in his neck and had an ataxic gait with no loss of strength and no issues with Plaintiff's eyes, ears, nose, throat, neck, thyroid, heart, lungs, abdomen, and muscles and bones (R. 396).  Dr. Jaeger's and Ms. Solar's observations were during or in close proximity to the relevant period.  Additionally, the ALJ discussed Plaintiff's conservative course of treatment, which was inconsistent with the treatment expected for someone who was totally disabled, and Plaintiff's failure to continue his medical treatment and follow-up appointments with neurology, casting doubt on the severity of

Plaintiff's symptoms at the time (R. 16-17).  In reviewing the ALJ's RFC determination, the Court will not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner."  *Mitchell*, 771 F.3d at 782.  The ALJ's findings and conclusions were supported by substantial evidence in the record; thus, the Court "must affirm, even if the proof preponderates against it."  *Dyer,* 395 F.3d at 1210 (quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

## IV.    CONCLUSION

For the reasons stated above, it is respectfully recommended that Plaintiff's Motion for Summary Judgment (DE 12) be **DENIED**, and Defendant's Cross Motion for Summary Judgment (DE 15) be **GRANTED**.

## V.    OBJECTIONS

The Parties will have fourteen (14) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge.  Failure to file objections timely shall bar the Parties from a *de novo* determination by the District Judge of an issue covered in this Report and shall bar the Parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report, except upon grounds of plain

error, if necessary, in the interest of justice.  28 U.S.C. § 636(b)(1) (2009); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on this 14th day of January, 2026.

_____
ELLEN F. D'ANGELO
UNITED STATES MAGISTRATE JUDGE

cc:     All Counsel of Record